04-1377C

ORAL ARGUMENT REQUESTED

FILED
AUG 2 4 2004
U.S. COURT OF
FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMERICAN AUTOMAR, INC. )
Plaintiff )
vs. ) Case No. ______________
)
THE UNITED STATES )
Defendant )
______________________ )

**PLAINTIFF'S MOTION FOR AN EXPEDITED RULING ON RIGHTS OF PARTIES UNDER THE CONTRACT DISPUTES ACT AND DECLARATORY JUDGMENT UNDER COURT RULE 57**

Donald C. Holmes
Attorney for
American Automar Inc.
Holmes, Schwartz & Gordon
205 Main Street
P.O. Box 339
Preston, MD 21655
(410) 820-9724 (telephone)
(410) 820-9640 (facsimile)

Dated: August 24, 2004

**PLAINTIFF'S MOTION FOR AN EXPEDITED RULING ON RIGHTS OF PARTIES UNDER THE CONTRACT DISPUTES ACT AND DECLARATORY JUDGMENT UNDER COURT RULE 57**

## TABLE OF CONTENTS


| HEADING | PAGE NO. |
|---|---|
| Special Need for Expedited Hearing | 1 |
| Expedited Briefing is Justified | 3 |
| Summary of Ruling Requested from this Court by Plaintiff | 3 |
| Statement of Undisputed Facts | 4 |
| Legal Discussion | 9 |
| This Court clearly has jurisdiction to grant non-monetary relief prior to the completion of performance under the contract | 9 |
| The law is well settled that the Government's failure to timely exercise an option or to otherwise strictly conform to the option's terms invalidates the option | 11 |
| Plaintiff's measure of damages is its cost of performing the illegal option plus a reasonable profit | 13 |
| The contract required "all" options to be exercised not later than April 23, 2004 | 14 |
| MSC Has Admitted That It Did Not Attempt to Exercise Any Options On Or Before April 23, 2004 | 16 |
| Conclusion | 18 |

**PLAINTIFF'S MOTION FOR AN EXPEDITED RULING ON RIGHTS OF PARTIES UNDER THE CONTRACT DISPUTES ACT AND DECLARATORY JUDGMENT UNDER COURT RULE 57**

## APPENDIX

| Ex. No. | Description | Appendix Page No. | Page No. Referenced in Motion |
|---|---|---|---|
| 1 | Applicable Sections of Contract N00033-02-C-5505 for MSC's charter of Plaintiff's ship at issue in this case | 1 | 5, 14, 15 |
| 2 | FAR 52.217-8, Option to Extend Services | 5 | 6, 16 |
| 3 | Bowman Affidavit asserting that MSC failed to provide any notification of MSC's intent to exercise any options. | 6 | 6, 16 |
| 4 | MSC's Website report identifying contract start date as "24-Dec-02"; contract expiration date as "23-May-04"; and "Next Option Declarable by 23-Apr-04". | 8 | 7, 15 |
| 5 | FAR § 17.207(a) | 10 | 7 |
| 6 | May 3, 2004 letter from Contracting Officer advising Plaintiff of Government's intent to redeliver the AMERICAN TERN on or about 23 May 2004 | 12 | 7, 17 |
| 7 | May 5, 2004 letter from the Contracting Officer advising Plaintiff of its intent to "extend the services of the AMERICAN TERN for a period of ninety (90) days until on or about 23 August 2004". | 14 | 7, 16 |
| 8 | June 15, 2004 letter from Contracting Officer advising Plaintiff of its intent to exercise the contract's first option at a reduced charter hire rate of $19, 900 per day | 15 | 8, 16 |
| 9 | Haver Affidavit | 16 | 2 |

| Ex. No. | Description | Appendix Page No. | Page No. Referenced in Motion |
|---|---|---|---|
| 10 | June 22, 2004 certified claim from Plaintiff's attorney to Contracting Officer | 18 | 8 |
| 11 | August 18, 2004 letter from Contracting Officer issuing a final decision denying Plaintiff's claim | 27 | 6, 8, 9, 15, 17, 18 |

# PLAINTIFF'S MOTION FOR AN EXPEDITED RULING ON RIGHTS OF PARTIES UNDER THE CONTRACT DISPUTES ACT AND DECLARATORY JUDGMENT UNDER COURT RULE 57

## TABLE OF CITATIONS

Statutes and Regulations.

1. Contract Disputes Act (CDA) of 1978 (41 U.S.C 601, et.seq.)

2. FAR § 17.207(a)

3. FAR 52.217-8, Option to Extend Services

Case Law.

1. Alliant Tech Systems v. United States, 178 F. 3d 1260 (Fed.Cir. 1999)

2. Holly Corporation, ASBCA No, 24975, 83-1 BCA ¶ 27,383

3. International Telephone & Telegraph, ITT Defense Communications Division v. U.S., 453 F. 2d 1283 (Ct.Cl. 1972)

4. Lockheed Martin IR Imaging Systems, Inc. v. West, 108 F. 3d 319 (CAFC 1997)

5. Safeguard Maintenance Corp., IBCA No. 39782, 93-3 BCA 26,081

6. White Sands Construction, Inc., ASBCA No. 51875, 04-1 BCA 32,598

ORAL ARGUMENT REQUESTED

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN AUTOMAR, INC. | ) | |
| Plaintiff | ) | |
| vs. | ) | Case No. ____________ |
| | ) | |
| THE UNITED STATES | ) | |
| Defendant | ) | |
| ______________________ | ) | |

**PLAINTIFF'S MOTION FOR AN EXPEDITED RULING ON RIGHTS OF PARTIES UNDER THE CONTRACT DISPUTES ACT AND DECLARATORY JUDGMENT UNDER COURT RULE 57.**

Plaintiff has today filed with the Clerk of this Court its Complaint under the Contract Disputes Act, seeking a declaratory judgment and monetary relief. This case involves the improper direction by a Contracting Officer to the Plaintiff to perform expired options on a contract for the charter of a container ship.

**Special Need for Expedited Hearing**

Court Rule 57 states that:

> The Court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar.

In this case Plaintiff respectfully submits there is a pressing need for an expedited hearing because:

1. Plaintiff as of August 23, 2004 is losing over $7,000 per day by performing this contract that it contends it is not required to perform; Plaintiff may lose as much

as $3 million over the next year through contract performance as a result of the Contracting Officer's improper direction that Plaintiff here perform these expired options [Exhibit 9; Appendix p.16-17];

2. There are no material factual disputes between the parties. As demonstrated below, all matters required for resolution of this case are undisputed and shown in the documents now available to both parties;

3. Plaintiff cannot afford to continue these losses on this contract without impairing its business and its ability to perform this and other Government contracts;

4. The impact of this loss is so great on Plaintiff that the improper exercise represents a "cardinal change", which would entitle Plaintiff to stop work; however, in good faith, Plaintiff has continued to perform while this dispute is being resolved. The equities strongly favor the granting of speedy consideration of this matter by this Court under Court Rule 57.

5. In the leading case dealing with the exercise of expired options, this Court issued its initial declaratory judgment in 45 days from the date of filing of the action. Alliant Techsystems v. United States, 178 F. 3d 1260, 1264 (Fed.Cir. 1999):

> The discretion to grant declaratory relief only in limited circumstances allows the court of board to restrict the occasions for intervention during contract performance to those involving a fundamental question of contract interpretation or a special need for early resolution of a legal issue. The Court of Federal Claims regarded this case as a particularly suitable candidate for declaratory relief. Alliant's argument throughout has been that, **once it had performed the main contract, it had no contractual obligations to the government under either the option clause or the disputes clause**. [Id. At 1271] [Emphasis added]

This same situation exists in this case now before the Court.

**<u>Expedited Briefing is Justified</u>**

Plaintiff requests that the Court set a schedule for expedited briefing and ruling on this motion. Plaintiff respectfully suggests to the Court the following briefing schedule:

1. Government Response to Plaintiff's Motion due in twenty days from filing;

2. Plaintiff's Reply to Government Response due in seven days from receipt; and

3. Argument before the Court at its earliest possible date.

**<u>Summary of Ruling Requested from this Court by Plaintiff</u>**

Plaintiff, by and through the undersigned counsel, hereby asks this Court for an expedited ruling as follows:

1. Defendant was required by the contract at issue here to exercise all options on or before April 23, 2004;

2. The Government's failure to give notice of such option exercise on or before April 23, 2004 caused the options to lapse;

3. The Government's attempt to exercise such lapsed options was ineffective, and Plaintiff has no obligation to perform the lapsed options; and

4. Plaintiff's measure of damages is its costs of performing the Government's invalid order plus a reasonable profit.

* * *

The Plaintiff sets out below the factual and legal basis upon which this ruling is requested.

**STATEMENT OF UNDISPUTED FACTS**

The following is a statement of relevant facts, which Plaintiff believes are undisputed, and which compel a conclusion that Plaintiff is entitled to judgment and a declaration of rights, as requested herein.

1. Plaintiff and defendant, Military Sealift Command (hereinafter, "MSC", or "defendant"), entered contract N00033-02-C-5505 (hereinafter, "the contract") for the

charter by MSC of Plaintiff's ship, the "American Tern", (hereinafter, "the ship").

2. The contract contained, *inter alia*, the following Clause IV(e) [Exhibit 1; Appendix p.3] entitled "Charter Period":

> This Charter Party shall be for the period designated in Box 4, commencing upon Charterer's acceptance of the Vessel and continuing until either the date of her redelivery or the completion of the voyage then current, at Charterer's sole option. **Any optional periods shall be stated in Box 4; in addition, the Government shall have** the Time Lost options as specified under paragraph (1) (Time Lost) below and **an option to extend services as specified in Part VIII(1)(FAR 52.217-8) below.** All optional periods shall be in direct continuation. **All optional periods shall be declared not later than thirty days prior to the expiration of the period then current.** . . . [Emphasis added]

3. The contract also contained a section called "Part I. DRYTIME BOXES", and which included a printed description of the information to be included in the boxes [Exhibit 1; Appendix p.1-2]. The information to be inserted in "Box 4" was as follows:

> Charter Period: 17 months with two (2) seventeen 17 month option periods. Government's option to cancel after one year in any option period with 60 days prior notice.

4. The clause incorporated in clause IV(e), above, and found at FAR 52.217-8, Option to Extend Services, [Exhibit 2; Appendix p.5] reads in part as follows:

> The Government may require continued performance of any services within the limits and at the rates specified in the contract. . . . The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within the period specified in the Schedule.

5. The contract commenced on December 24, 2002, which was the beginning of the 17-month base term of the contract. At all times pertinent to this dispute, the "period then current" [see ¶ 2 above] was the 17 month base term of the contract, which would expire, absent MSC's timely option exercise, on May 23, 2004.

6. The date, which was "thirty days prior to the expiration of the period then current" [see ¶ 2 above], was April 23, 2004.

7. At no time on or before April 23, 2004 did Plaintiff receive nor did MSC transmit, either orally or in writing, any notification that MSC was exercising or intended to exercise any options. [Exhibit 3; Appendix p.6-7; and Exhibit 11, p.27-28]

8. Sometime following the commencement of the contract, MSC posted a report on its public website [Exhibit 4; Appendix p.8-9] which included information concerning the contract. This report identified the contract commencement date of "24-Dec-02", the contract expiration of "23-May-04"[1], and a statement that "Next Option Declarable by 23-Apr-04".

9. FAR § 17.207(a) [Exhibit 5; Appendix p.10-11] provides *inter alia*:

> When exercising an option, the Contracting Officer shall provide written notice to the contractor within the time period specified in the contract.

10. By letter dated May 3, 2004, [Exhibit 6; Appendix p.12-13] the Contracting Officer advised Plaintiff as follows:

> Please be advised that the Government intends to redeliver the AMERICAN TERN (Contract N00033-02-C-5505) on or about 23 May 2004 upon completion of discharge of Government cargo in Chuk Sumet, Thailand.

11. By letter dated May 5, 2004, [Exhibit 7; Appendix p.14] the Contracting Officer advised Plaintiff,

> The Government hereby exercises its right under Part VII (FAR 52.217-8, Option to Extend

[1] MSC apparently reversed entries regarding expiration dates. The column labeled "expiration date current period" is stated to be "23-May-07", while the "maximum expiration date" is stated as "23-May-04". This is an obvious error; these two dates should be reversed.

> Services) of contract N00033-02-C-5505 to extend the services of the AMERICAN TERN for a period of ninety (90) days until on or about 23 August 2004.

12. By letter dated June 15, 2004, [Exhibit 8; Appendix p.15] the Contracting Officer further advised Plaintiff as follows:

> Pursuant to Part IV(e) of Contract N00033-02-C-5505, the Government hereby declares the first option under said contract (AMERICAN TERN), to commence in direct continuation of the current period on or about 24 August 2004. At that time the charter hire rate will reduce to $19,900.00 per day. Please be reminded that this contract remains incrementally funded (DFARS 252.23207007, Limitation of Government's obligation), with funding to be provided as such.

13. Defendant does not contend that it exercised or attempted to exercise any options on or before April 23, 2004. [Exhibit 11; Appendix p.27-28]

14. By letter dated June 22, 2004, [Exhibit 10; Appendix p.18-26] Plaintiff's attorney herein advised the Contracting Officer that Plaintiff considered MSC's purported exercise of options was untimely and ineffective, that Plaintiff would follow the Contracting Officer's direction to continue work with a reservation of rights because Plaintiff considered such direction to be a breach of the contract, and Plaintiff submitted a request for a final decision with a duly certified claim.

15. By letter dated August 18, 2004, [Exhibit 11; Appendix p.27-28] the Contracting Officer issued a final decision denying Plaintiff's claim.

**LEGAL DISCUSSION**

This Court has jurisdiction to grant non-monetary relief prior to the completion of performance under the contract.

Alliant Techsystems, Inc. v. U.S., 178 F. 3d 1260 (Fed.Cir. 1999), was a case in which the Plaintiff was seeking a expedited ruling that it was not obligated to perform the option portion of a contract because the Government had not validly invoked the option clause.

The Government had argued that the Disputes Clause of the contract required the contractor to complete the disputed work prior to seeking relief. The Court rejected that argument stating:

> The point is simply that the disputes clause does not impose an additional obligation on the contractor to wait until performance is completed before filing a claim for relief from the Contracting Officer's decision. [Id at 1266]

The Court reviewed the relevant law and concluded

> Allowing the Court to grant declaratory relief would not "interfere with the operation of ongoing contracts," because the disputes clause in Government contracts "says the contractor has to go on performing while any dispute is occurring". [Id at 1269]

The Court further noted:

> We have held . . . that the Tucker Act grants the Court of Federal Claims jurisdiction to grant nonmonetary relief in connection with contractor claims, including claims requesting an interpretation of contract terms. [Id at 1270]

The Court found that the Plaintiff had demonstrated a "special need" to the COFC for resolving the issues because it was objecting to the requirement that it perform at all, not to the requirement that it perform without additional compensation. The Court concluded that:

> [T]he Court of Federal Claims was correct in determining that it had jurisdiction to entertain Alliant's request for relief and that it was not required to deny relief for prudential reasons. [Id at 1272]

Having so concluded, the Court went on to conclude on the merits that:

> With respect to the option clause, we conclude that Government's failure to exercise the option in accordance with its terms in this case results in Alliant having no obligation under that provision of the contract. [Id at 1275]

The Court did hold, however, that Alliant was obligated by the disputes clause to perform diligently pending a Court decision on the validity of the option exercise.

In the case at bar, Plaintiff is challenging MSC's exercise of the option by use of this motion for expedited

ruling, but has continued to perform in accordance with the Contracting Officer's final decision and the Disputes Clause.

If the Court agrees with Plaintiff that MSC's purported exercise of the options was invalid, then the contract will be at an end and Plaintiff will be released from further obligation under the disputes clause.

The law is well settled that the Government's failure to timely exercise an option or to otherwise strictly conform to the option's terms invalidates the option.

In Holly Corporation, ASBCA No, 24975, 83-1 BCA ¶ 27,383 the appellant had claimed that the Government had improperly and ineffectively exercised an option for an annual renewal period, and that its insistence that appellant continue performance under the original contract terms constituted a constructive change for which appellant was entitled to an equitable adjustment.

The Government had executed a unilateral modification purporting to renew the contract, and added a clause which stated that the Government's liability for payment was contingent on the availability of appropriated funds. The Board, citing both Williston and Corbin, along with numerous Government contract decisions, denied the Government's motion for summary judgment stating:

> **In the first instance, since the exercise of an option is ordinarily required within a stated period of time, the expiration of that period automatically terminates the power of acceptance.** . . . (Emphasis added)

In Safeguard Maintenance Corp., IBCA No. 39782, 93-3 BCA 26,081, that Board held:

> [I]n order to bind the contractor, the **Government's acceptance of an option must be timely exercised** and otherwise in accordance with the terms of the option. If the **Government fails to exercise the option in a timely manner**, or attempts to alter the conditions of the contractor's obligation, such as the period of performance, **the purported option exercise normally becomes ineffective.** (Emphasis added)

In International Telephone & Telegraph, ITT Defense Communications Division v. U.S., 453 F. 2d 1283 (Ct.Cl. 1972), the issue to be decided was the proper interpretation of the contract as to the time and manner of giving notice for an option exercise.

In holding for the Plaintiff, the Court of Claims stated, "[w]e are also of the opinion that time was of the essence with respect to the giving of the notice", 453 F. 2d at 1290, 1291. The Court cited Corbin on Contracts § 273 (1963 Ed.):

> If the time for acceptance of an ordinary offer is expressly limited by the offeror, **acceptance must take place within that time or not at all**; time is of the essence. The same is true of an

> offer that has the form of an option contract. (Emphasis added)

In Lockheed Martin IR Imaging Systems, Inc. v. West, 108 F. 3d 319 (CAFC 1997), while the issue was not the timeliness of the option exercise, the Court did affirm the rule that the Government's exercise of an option had to be in strict compliance with the terms of the option.

The Court cited prior decisions holding to the rule and quoted, 108 F.3d at 323:

> It is well settled that to properly exercise that option, the Government's acceptance of that offer had to be unconditional and in exact accord with the terms of the contract being renewed.

Plaintiff's measure of damages is its cost of performing the illegal option plus a reasonable profit.

If the Court rules in favor of Plaintiff on this motion, Plaintiff will not be obligated to continue performing the lapsed options, and it will be entitled to damages for the work it did perform pursuant to the Contracting Officer's direction.

Plaintiff's measure of damages for performing any extra-contractual effort resulting from MSC's invalid exercise of the options is Plaintiff's costs plus a reasonable profit.

In White Sands Construction, Inc., ASBCA No. 51875, 04-1 BCA 32,598, the Board held:

> While the Government challenge to the total cost methodology for computing the claim is ordinarily a valid one, it does not apply to these circumstances. The ineffective attempt to exercise an option gives a contractor the right to recover the costs it incurred in performing that work plus a reasonable profit on those costs

There was a like holding by the Federal Circuit in Lockheed Martin IR Imaging Systems, Inc. v. West, *supra* where that Court held that the Plaintiff "shall recover its increased costs in supplying the items under the conditions in which they were ordered, and profit thereon as appropriate." [108 F. 3d at 324]

The contract required "all" options to be exercised not later than April 23, 2004.

The threshold and controlling question is to determine when the contract required options to be exercised. The answer to that question is found unambiguously in the plain language of clause IV(e). [¶ 2 above; Statement of Undisputed Fact] [Appendix 1, p.3]

That clause identifies the options to which it applies by reference to them within its own boundaries. It references the "Box 4" options, "and an option to extend services as specified in Part VIII(1)(FAR 52.217-8) below".

Following these references, the clause states clearly, unambiguously, and unequivocally:

> All optional periods shall be declared not later than thirty days prior to the expiration of the period then current. [Emphasis added]

There can be no rational argument that the word "all" somehow means less than all. The use of this word compels a conclusion that when the word "all" is used without qualification (e.g. "all except . . ."), it does not mean "some", or "most", or even "nearly all".

It means each and every option referenced in the clause; the whole number of options so referenced.

Accordingly, MSC was required by the plain language of the contract to exercise all options "not later than thirty days prior to the period then current".

The contract commenced on December 24, 2002 [Exhibit 11; Appendix p. 27] and was intended to run for a 17-month period, which would, by simple arithmetic, expire on May 23, 2004. [see Exhibit 1; Appendix p.2] Indeed this is the date so indicated in MSC's website report [see Exhibit 4; Appendix p.8-9].

The "period then current" was of course the base contract period of 17 months. Had MSC "declared" any option to be exercised prior to April 23, 2004, the

contract would then have shifted into another "period", i.e. an option period. However, MSC did not so "declare", and the base period continued in existence until the contract's expiration date of May 23, 2004.

Since MSC did not "declare" any other options exercised prior to April 23, 2004, "all" options lapsed after the passage of that date. After April 23, 2004, MSC no longer had the power to exercise any of the options in the contract, and the contract, by its own terms, expired on May 23, 2004.

MSC's untimely attempt to exercise the "Option to Extend Services" [Exhibit 2; Appendix p.5] in its letter of May 5, 2003 [Exhibit 7; Appendix p.14] was ineffective and the purported exercise was a nullity. Since the contract expired on May 23, and the letter of May 5 was ineffective to exercise that option, MSC's letter of June 15 [Exhibit 8; Appendix p.15] purporting to exercise a "Box 4" option was also ineffective.

MSC Has Admitted That It Did Not Attempt to Exercise Any Options On Or Before April 23, 2004.

The Affidavit of Plaintiff's Mr. Bowman, [Exhibit 3; Appendix p.6-7] states that Plaintiff never received any notification whatsoever on or before April 23, 2004 that

MSC intended to exercise any options. The Government has offered no evidence to the contrary.

In fact, the Contracting Officer's final decision [Exhibit 11; Appendix p.27-28] is an admission that MSC never attempted to exercise any options prior to April 23, 2004. The Contracting Officer's first mention of any option exercise is found in the 4th paragraph of the final decision by reference to its letter of May 5, 2004. [Exhibit 11; Appendix p.27]

Indeed, MSC's letter of May 3, 2004 [Exhibit 6; Appendix p.12-13] is recognition that all its options had expired since none were declared on or before April 23, 2004. In that letter MSC advised Plaintiff that it intended to "redeliver" Plaintiff's ship to Plaintiff "on or about 23 May 2004", the expected termination date of the contract.

Had MSC believed that it had effectively exercised any options prior to April 23, this letter would have made no sense, and would not have been sent. The letter is evidence that MSC believed that the contract would terminate by its own terms on May 23, 2204.

The Court must accept as undisputed and admitted fact, therefore, that MSC failed to declare any options to

Plaintiff prior to April 23, 2004; the Contracting Officer so admits in his final decision. [Exhibit 11; Appendix p.27]

Since the contract required "all" options to be exercised by April 23, 2004, and the Government failed to do so, this Court must decide as a matter of law that "all" of MSC's options lapsed and that any subsequent attempt to exercise any options was ineffective and a nullity.

Further, the legal effect of MSC's insistence that Plaintiff perform under the lapsed options was as the Federal Circuit held in Alliant Techsystems, Inc. v. U.S., *supra*,

> With respect to the option clause, we conclude that the Government's failure to exercise the option in accordance with its terms in this case results in Alliant having no obligations under that provision of the contract. [178 F. 3d at 1275]

**CONCLUSION**

Plaintiff has demonstrated entitlement to the declaratory relief requested in this action. An expedited ruling is particularly appropriate since it would settle the dispute between the parties.

**WHEREFORE**, Plaintiff asks that the Court enter an Expedited Ruling Order in favor of Plaintiff and against Defendant as follows:

1. Defendant was required by the contract to exercise all options on or before April 23, 2004;

2. Defendant failed to exercise any options prior to April 23, 2003, thereby causing all options to lapse;

3. Defendant's subsequent attempts to exercise any options were ineffective and a legal nullity, and Plaintiff has no obligation to perform any of the lapsed options; and

4. Plaintiff's measure of damages for complying with the Contracting Officer's invalid order is its actual costs plus a reasonable profit.

Plaintiff also seeks such other and further relief as this Court deems just and proper.

Respectfully submitted,

Donald C. Holmes
Attorney for
American Automar Inc.
Holmes, Schwartz & Gordon
205 Main Street
P.O. Box 339
Preston, MD 21655
(410) 820-9724 (telephone)
(410) 820-9640 (facsimile)

Dated: August 24, 2004

Of Counsel:

Roy E. Bowman, Esquire
American Automar, Inc.
6550 Rock Spring Dr., Suite 300
Bethesda, MD 20817

Michael A. Gordon, Esquire
Holmes, Schwartz & Gordon
17 West Jefferson St., Suite 202
Rockville, Maryland 20850

**PLAINTIFF'S MOTION FOR AN EXPEDITED RULING ON RIGHTS OF PARTIES UNDER THE CONTRACT DISPUTES ACT AND DECLARATORY JUDGMENT UNDER COURT RULE 57**

## APPENDIX

| Ex. No. | Description | Appendix Page No. | Page No. Referenced in Motion |
|---|---|---|---|
| 1 | Applicable Sections of Contract N00033-02-C-5505 for MSC's charter of Plaintiff's ship at issue in this case | 1 | 5, 14, 15 |
| 2 | FAR 52.217-8, Option to Extend Services | 5 | 6, 16 |
| 3 | Bowman Affidavit asserting that MSC failed to provide any notification of MSC's intent to exercise any options. | 6 | 6, 16 |
| 4 | MSC's Website report identifying contract start date as "24-Dec-02"; contract expiration date as "23-May-04"; and "Next Option Declarable by 23-Apr-04". | 8 | 7, 15 |
| 5 | FAR § 17.207(a) | 10 | 7 |
| 6 | May 3, 2004 letter from Contracting Officer advising Plaintiff of Government's intent to redeliver the AMERICAN TERN on or about 23 May 2004 | 12 | 7, 17 |
| 7 | May 5, 2004 letter from the Contracting Officer advising Plaintiff of its intent to "extend the services of the AMERICAN TERN for a period of ninety (90) days until on or about 23 August 2004". | 14 | 7, 16 |
| 8 | June 15, 2004 letter from Contracting Officer advising Plaintiff of its intent to exercise the contract's first option at a reduced charter hire rate of $19, 900 per day | 15 | 8, 16 |
| 9 | Haver Affidavit | 16 | 2 |

| Ex. No. | Description | Appendix Page No. | Page No. Referenced in Motion |
|---|---|---|---|
| 10 | June 22, 2004 certified claim from Plaintiff's attorney to Contracting Officer | 18 | 8 |
| 11 | August 18, 2004 letter from Contracting Officer issuing a final decision denying Plaintiff's claim | 27 | 6, 8, 9, 15, 17, 18 |

# EXHIBIT 1

# MSC DRYTIME 99

(5-99)

MSC

## PART I. DRYTIME BOXES

| | |
|---|---|
| | Vessel(s): |
| | Owner, DUNS, CAGE, TIN (and TIN of parent, if applicable) |
| Solicitation Number (date): | Contract Number (date): |
| 1. Vessel(s) Required: | 2. Place / Range of Delivery (Part IV(b)): |
| | 3. Place / Range of Redelivery (Part IV(c)): |
| 4. Charter Period (Part IV(e)): | 5. Laydays (Part IV(b)):<br>Commencing:<br>Cancelling: |
| 6. Terms/Conditions/Attachments added, deleted or modified: | |

3. Place/Range of Redelivery: Worldwide

4. Charter Period: 17 months with two (2) seventeen 17 month option periods. Government's option to cancel after one year in any option period with 60 days prior notice.

5. Laydays: Commencing: 01 Dec 02/Cancelling: 24 Dec 02

6. Terms/Conditions/Attachments added, deleted or modified:

V(a) Security Clearance, V(b) Communications Equipment, V(c) Navigational Equipment, and V(e) Bonuses; added

VII - Change date of clause to "Dec 2001".

IX(c) Reserved

IX(d) Small Arms, Ammunition, and Physical Security Requirements

IX(e) Reserved

IX(f) Equipment and Systems Required for Chemical, Biological, and Radiological Defense (CBR-D).

IX(g) COMSCINST 3121.9 Series, MSC Standard Operating Manual (SOM).

IX(h) Government Furnished Property and Directive (GFP), ADD - Reefer Spare Parts (GFE).

IX(i) Equipment and Systems Required for Antiterrorism/Force Protection (AT/FP).

IX(j) Antiterrorism/Force Protection (AT/FP) Training and Reporting Requirements,

IX(k) DD Form 254, Contract Security Classification Specification.

IX(l) MSC Form 9010/8, Ship's Characteristics Record for Operations.

IX(n) Wage and Fringe Benefits under the Service Contract Act.

contemplated under this Charter Party. Any Associated Equipment shall upon delivery be as described in this Charter Party and all cargo-handling equipment shall be rigged, secured, and operable. The Owner shall exercise due diligence to maintain the Vessel and Associated Equipment in such state during the period of the Charter Party.

(c) **Redelivery**. Unless lost, the Vessel shall be redelivered at a port or place in accordance with Box 3. Charterer shall give Owner not less than twenty (20) days notice of expected date and range of redelivery, and not less than ten (10) days notice of actual port or place of redelivery.

(d) **Ports/Places (MSC 5252.247-9810 (Jun 1998))**

(1) Safety. The Charterer shall exercise due diligence to order the Vessel to safe berths or places (or alongside vessels or lighters reachable on her arrival and designated/procured by Charterer) that the Vessel can approach, lie at, and depart from always accessible, always afloat. The Charterer shall not, however, be deemed to warrant the safety of any berth or place and shall not be liable or accountable for any loss, damage, injury, or delay resulting from any unsafe condition at any berth or place unless caused by Charterer's failure to exercise due diligence as aforesaid. Any lightering will be at the expense of the Charterer; however, in the event the Charterer directs Owner to arrange for lighterage services, the Owner shall make all necessary arrangements therefor.

(2) Ice. The Vessel shall not be ordered or bound to enter any port or place inaccessible due to ice or at which lights, lightships, markers, or buoys on Vessel's arrival are (or are likely to be) withdrawn by reason of ice. The Vessel shall not be obliged to force ice. If a port or place to which the Vessel is ordered is inaccessible due to ice, the Master shall immediately notify Charterer requesting revised orders and shall remain outside the ice-bound area. If there is danger of the Vessel's being frozen in at any port or place, the Vessel shall, at Master's discretion, proceed to the nearest safe and ice-free position, at the same time requesting Charterer's revised orders. Any delay or detention resulting from ice to be for Charterer's account.

Part IV

(e) **Charter Period**. This Charter Party shall be for the period designated in Box 4, commencing upon Charterer's acceptance of the Vessel and continuing until either the date of her redelivery or the completion of the voyage then current, at Charterer's sole option. Any optional periods shall be stated in Box 4; in addition, the Government shall have the Time Lost options as specified under paragraph (l) (Time Lost) below and an option to extend services as specified in Part VIII(1) (FAR 52.217-8) below. All optional periods shall be in direct continuation. All optional periods shall be without guaranty, at Charterer's sole option. Optional periods shall be declared not later than thirty days prior to the expiration of the period then current. If the Charterer exercises any option to cancel this Charter as specified at Box 4, such option to redeliver the Vessel to the Owner shall be in accordance with the prior-notice time frames identified at paragraph (c) (Redelivery) above.

## VIII. FAR 52.252-2 CLAUSES INCORPORATED BY REFERENCE (FEB 1998)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at these addresses:

http://www.arnet.gov/far/
http://www.acq.osd.mil/dp/dars/dfars.html

*(Contracting Officer check as appropriate.)*

__X__ (1) FAR 52.217-8 Option to Extend Services (AUG 1989)

_____ (2) FAR 52.219-6 Notice of Total Small Business Set-Aside (JUL 1996)

_____ (3) FAR 52.219-7 Notice of Partial Small Business Set-Aside (JUL 1996)

__X__ (4) FAR 52.232-35 Designation of Office for Government Receipt of Electronic Funds Transfer Information (MAY 1999)

(c) Designated Office:
Name:
**Military Sealift Command**

Mailing Address:
**Washington Navy Yard**
**ATTN: Code N8**
**914 Charles Morris Court, SE**
**Washington, DC 20398-5540**

Telephone Number:
**202-685-5864**

Person to Contact:
**Carolyn Merritt**

Electronic Address:
**Carolyn.merritt@smtpgw.msc.navy.mil**

__X__ (5) FAR 52.245-2 Government Property (Fixed-Price Contracts) (DEC 1989)

__X__ (6) DFARS 252.204-7004 Required Central Contractor Registration (MAR 1998)

# EXHIBIT 2

CODE OF FEDERAL REGULATIONS
TITLE 48--FEDERAL ACQUISITION REGULATIONS SYSTEM
CHAPTER 1--FEDERAL ACQUISITION REGULATION
SUBCHAPTER H--CLAUSES AND FORMS
PART 52--SOLICITATION PROVISIONS AND CONTRACT CLAUSES
SUBPART 52.2--TEXTS OF PROVISIONS AND CLAUSES
Current through August 17, 2004; 69 FR 51014

**52.217-8** Option to Extend Services.

As prescribed in 17.208(f), insert a clause substantially the same as the following:

Option to Extend Services (Nov 1999)

The Government may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within the period specified in the Schedule. The Contracting Officer may exercise the option by written notice to the Contractor within ___ [insert the period of time within which the Contracting Officer may exercise the option].

(End of clause)

[54 FR 5058, Jan. 31, 1989; 54 FR 29283, July 11, 1989; (FAC) 97-14, (FAR) Case 98-606, Item IX, 64 FR 51843, Sept. 24, 1999]

<General Materials (GM) - References, Annotations, or Tables>

48 C. F. R. **52.217-8**

48 CFR **52.217-8**

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

In the United States Court of Federal Claims

American Automar, Inc.,
Plaintiff

vs.

The United States
Defendant.

Affidavit of Roy G. Bowman

BEFORE ME, the undersigned authority, this day personally appeared Roy G. Bowman, who, being first duly sworn on oath, deposes and says:

1. My name is Roy G. Bowman. I am employed by American Automar, Inc., the Plaintiff in this case. My position with the company is Executive Vice President, pursuant to which I have personal knowledge of contract N0033-02-C-5505 between Military Sealift Command (MSC) and the Appellant, and the communications, written and oral, between the parties.

2. Pursuant to the contract, Plaintiff provided a container ship, the "American Tern" to transport certain supplies as directed by MSC. The contract commenced on December 24, 2002, upon MSC's acceptance of the vessel, and was to continue for a period of 17 months unless extended by MSC's exercise of an option.

3. During contract formation and during contract performance, I was aware that the contract contained special clause IV(e), which specifically referenced all options for extending the contract, and required that all such options be exercised "not later than thirty days prior to the expiration of the period then current".

4. At no time on or prior to April 23, 2004, did Appellant receive from MSC, either orally or in writing, any notification that MSC intended to or was presently exercising, any options for extending the contract.

5. I hereby state under the penalties of perjury that the foregoing statements are true and correct to the best of my personal knowledge and belief.

Roy G Bowman

Signature

SUBSCRIBED AND SWORN before me, a notary public for the State of Maryland, by ROY G. BOWMAN, who (is personally known to me or has been satisfactorily identified), on this 16TH day of AUGUST, 2004.

Amabel L. Landen

Notary Public

AMABEL L. LANDEN
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires January 28, 2006

# EXHIBIT 4

| TYPE<br>CONTRACT #/<br>CONTRACTOR/<br>YEAR BUILT | CURRENT DAILY<br>RATE* | CONTRACT<br>COMMENCEMENT/<br>EXPIRATION<br>DATE CURRENT<br>PERIOD | REMAINING<br>OPTIONS/<br>MAXIMUM<br>EXPIRATION<br>DATE | NEXT OPTION<br>DECLARABLE<br>BY |
|---|---|---|---|---|
| | RE-SUPPLY (TIME CHARTERED) | | | |
| SEAMARK III<br>BARGE MOBRO 1210<br>N0003304C5504<br>BEYEL BROS INC<br>(2003/2005) | $2350.50/10 MO<br>$2500.50$12 MO OPT<br>$2,500.50/2MO OPT | 1-Dec-03<br>30-Sep-04 | 1-12MO OPT<br>1-2 MO OPT<br>30-Nov-05 | 1-Aug-04<br>10 MTH PERIOD W/OPT FOR<br>(1) 12 MTH PERIOD & (1) 2 MTH PERIOD W/OPT<br>TO CXL AFTER 6MTH IN OPT PERIOD<br>W/NOT< 20 DAY NOTICE |
| AMERICAN TERN<br>(EX-KARIBA)<br>N0003302C5505<br>AMERICAN AUTOMAR<br>(1990) | $22,900 1ST 17 MO*<br>$19,900 1ST 17 MO OPT<br>$18,900 2ND 17 MO OPT | 24-Dec-02<br>23-Mar-07 | 2-17 MO OPTION<br>23-May-04 | 23-Apr-04<br>GOVT OPTION TO<br>CANCEL AFTER ONE<br>YEAR IN ANY OPT<br>PERIOD W/60 DAYS<br>PRIOR NOTICE |
| | CONTRACT OF AFFREIGHTMENT | | | |
| DIANE FOSS/BG PT+S379<br>N00033-00-C-5218<br>FOSS MARITIME<br>(1966) | $45,833/VOYAGE<br>$46,520/VOYAGE<br>$47,218/VOYAGE<br>$47,927/VOYAGE<br>$48,645/VOYAGE* | 1-Oct-99<br>30-Sep-00<br>1-Oct-00<br>30-Sep-01<br>1-Oct-01<br>30-Sep-02<br>1-Oct-02<br>30-Sep-03<br>1-Oct-03<br>30-Sep-04 | 1 one-year option<br>30-Sep-04 | 30-Sep-04 |
| | SEALIFT (TANKERS) PROGRAM - 685-5805 | | | |
| MONTAUK<br>(EX BITTEN THERESA)<br>N0003301C5401<br>(1999) | $19,700 1ST 17 MO<br>$15,325 1ST 17 MO OPT*<br>$15,325 2ND 17 MO OPT | 17-Mar-01<br>16-Jan-04 | 1-17 mo option<br>16-Jun-05 | 16-Dec-03<br>OPT EXERCISED UP<br>TO END FY 04 |

ge f

MSC REPORT 3110-3
(202) 685-5939
EFFECTIVE 1 JAN 04

SUMMARY OF TIME CHARTERED AND
CONTRACT OPERATED SHIPS FOR
2 nd QUARTER FY04
BY PROGRAM

| SHIP/TYPE<br>CONTRACT #/<br>CONTRACTOR/<br>YEAR BUILT | CURRENT DAILY<br>RATE* | CONTRACT<br>COMMENCEMENT/<br>EXPIRATION<br>DATE CURRENT<br>PERIOD | REMAINING<br>OPTIONS/<br>MAXIMUM<br>EXPIRATION<br>DATE | NEXT OPTION<br>DECLARABLE<br>BY |
|---|---|---|---|---|
| PREPOSITIONING PROGRAM-685-5531 | | | | |
| CONTAINER RO/RO (TIME CHARTERED) | | | | |
| MAJ BERNARD F FISHER<br>(EX SEA FOX)<br>CON RO-RO<br>N0003399C3303<br>SEALIFT INC.<br>(1985)(PREPO) | $25,425 1ST 30 MONTHS<br>$19,450 LAST 29 MONTHS* | 9-Sep-99<br>8-Aug-04 | N/A<br>8-Aug-04 | N/A<br>FIRM 59 MONTHS |
| CONTAINER (TIME CHARTERED) | | | | |
| CAPTAIN S. L. BENNETT<br>N0003302C3301<br>SEALIFT, INC.<br>(1984) (PREPO) | $23,300 FIRM 59 MOS | 24-Nov-02<br>23-Oct-07 | N/A<br>23-Oct-07 | N/A<br>FIRM 59 MONTHS |
| MERLIN (TBR)<br>N0003302C3302<br>SEALIFT, INC.<br>1978 | $19,285 FIRM 59 MONTHS | 30-Sep-02<br>28-Aug-07 | N/A<br>28-Aug-07 | N/A<br>FIRM 59 MONTHS |
| LTC JOHN U.D. PAGE<br>(EX NEWARK BAY)<br>CONTAINER<br>N0003300C3201<br>MAERSK LINE LTD<br>(1985) (PREPO) | $32,579 FIRM 59 MONTHS | 2-Mar-01<br>1-Feb-06 | N/A<br>1-Feb-06 | N/A<br>FIRM 59 MONTHS |

ge f

**EXHIBIT 5**

CODE OF FEDERAL REGULATIONS
TITLE 48--FEDERAL ACQUISITION REGULATIONS SYSTEM
CHAPTER 1--FEDERAL ACQUISITION REGULATION
SUBCHAPTER C--CONTRACTING METHODS AND CONTRACT TYPES
PART 17--SPECIAL CONTRACTING METHODS
SUBPART 17.2--OPTIONS
Current through August 17, 2004; 69 FR 51014

**17.207** Exercise of options.

(a) When exercising an option, the contracting officer shall provide written notice to the contractor within the time period specified in the contract.

(b) When the contract provides for economic price adjustment and the contractor requests a revision of the price, the contracting officer shall determine the effect of the adjustment on prices under the option before the option is exercised.

(c) The contracting officer may exercise options only after determining that--

(1) Funds are available;

(2) The requirement covered by the option fulfills an existing Government need;

(3) The exercise of the option is the most advantageous method of fulfilling the Government's need, price and other factors (see paragraphs (d) and (e) below) considered; and

(4) The option was synopsized in accordance with part 5 unless exempted by 5.202(a)(10) or other appropriate exemptions in 5.202.

(d) The contracting officer, after considering price and other factors, shall make the determination on the basis of one of the following:

(1) A new solicitation fails to produce a better price or a more advantageous offer than that offered by the option. If it is anticipated that the best price available is the option price or that this is the more advantageous offer, the contracting officer should not use this method of testing the market.

(2) An informal analysis of prices or an examination of the market indicates that the option price is better than prices available in the market or that the option is the more advantageous offer.

(3) The time between the award of the contract containing the option and the exercise of the option is so short that it indicates the option price is the lowest price obtainable or the more advantageous offer. The contracting officer shall take into consideration such factors as market stability and comparison of the time since award with the usual duration of contracts for such supplies or services.

(e) The determination of other factors under (c)(3) of this section should take into account the Government's need for continuity of operations and potential costs of disrupting operations.

(f) Before exercising an option, the contracting officer shall make a written determination for the contract file that exercise is in accordance with the terms of the option, the requirements of this section, and part 6. To satisfy requirements of part 6 regarding full and open competition, the option must have been evaluated as part of the initial competition and be exercisable at an amount specified in or reasonably determinable from the terms of the basic contract, e.g.--

(1) A specific dollar amount;

(2) An amount to be determined by applying provisions (or a formula) provided in the basic contract, but not including renegotiation of the price for work in a fixed-price type contract;

(3) In the case of a cost-type contract, if--

(i) The option contains a fixed or maximum fee; or

(ii) The fixed or maximum fee amount is determinable by applying a formula contained in the basic contract (but see 16.102(c));

(4) A specific price that is subject to an economic price adjustment provision; or

(5) A specific price that is subject to change as the result of changes to prevailing labor rates provided by the Secretary of Labor.

(g) The contract modification or other written

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

document which notifies the contractor of the exercise of the option shall cite the option clause as authority.

[50 FR 1742, Jan. 11, 1985; 50 FR 52434, Dec. 23, 1985; 53 FR 17858, May 18, 1988]

<General Materials (GM) - References, Annotations, or Tables>

48 C. F. R. **17.207**

48 CFR **17.207**

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 6

**From:** Cosgriff, Larry
**Sent:** Monday, May 03, 2004 4:45 PM
**To:** Hagstrom, Paul; Nette, Chris; Shepard, Brian
**Cc:** Haver, Joe; Carleton, Bruce
**Subject:** FW: AMERICAN TERN: 20-DAY REDELIVERY NOTICE
fyi

-----Original Message-----
**From:** Allen, Kenneth D CIV MSCHQ [mailto:kenneth.allen@navy.mil]
**Sent:** Monday, May 03, 2004 4:41 PM
**To:** lcosgriff@automar.com
**Cc:** Joe Haver (E-mail); Wieszek, Carole H CIV MSCHQ; Henry, John USN COMSC 210, NA, 290-1; Connolly, Jeff USNCIV COMSC 210, NA, 275-5; Pickering, Timothy S CIV MSCHQ
**Subject:** AMERICAN TERN: 20-DAY REDELIVERY NOTICE

4330

03 May 2004

Ser PM5/

Mr. Larry Cosgriff

American Automar, Inc

6550 Rock Spring Drive, Suite 300

Bethesda, MD 20817

Via Electronic Mail

Dear Mr. Cosgriff:

Please be advised that the Government intends to redeliver the AMERICAN TERN (Contract N00033-02-C-5505) on or about 23 May 2004 upon completion of discharge of Government cargo in Chuk Sumet, Thailand.

Please contact the undersigned, 202-685-5825, or Ms. Pamela Reck, 202-685-5813, should you have any questions concerning this issue.

Sincerely,

//signed//

K.D. ALLEN

Contracting Officer

Military Sealift Command

# EXHIBIT 7

DEPARTMENT OF THE NAVY
COMMANDER, MILITARY SEALIFT COMMAND
914 CHARLES MORRIS CT SE
WASHINGTON NAVY YARD DC 20398-5540

IN REPLY REFER TO

4330
Ser/PM5
05 May 2004

American Automar, Inc.
Mr. Larry Cosgriff
6550 Rock Spring Drive
Suite 300
Bethesda, MD 20817

Via Electronic Mail, Facsimile, and Federal Express

Dear Mr. Cosgriff:

The Government hereby exercises its right under Part VIII (FAR 52.217-8, Option to Extend Services) of contract N00033-02-C-5505 to extend the services of the AMERICAN TERN for a period of ninety (90) days until on or about 23 August 2004.

Please contact the undersigned, 202-685-5825, should you have any questions regarding this issue.

Sincerely,

K.D. ALLEN
Contracting Officer

# EXHIBIT 8

DEPARTMENT OF THE NAVY
COMMANDER MILITARY SEALIFT COMMAND
914 CHARLES MORRIS CT SE
WASHINGTON NAVY YARD DC 20398-5540

REFER TO:
5000
Ser PM5
15 June 2004

Mr. Larry Cosgriff
American Automar, Inc.
6550 Rock Spring Drive, Suite 300
Bethesda, MD 20817

Via Facsimile and Fed-Ex

Dear Mr. Cosgriff:

Pursuant to Part IV(e) of Contract N00033-02-C-5505, the Government hereby declares the first option under said contract (AMERICAN TERN), to commence in direct continuation of the current period on or about 24 August 2004. At that time the charter hire rate will reduce to $19,900.00 per day. Please be reminded that this contract remains incrementally funded (DFARS 252.232-7007, Limitation of Government's Obligation), with funding to be provided as such.

Please contact the undersigned, 202-685-5825, should you have any questions with this issue.

Sincerely,

K. D. ALLEN
Contracting Officer

TOTAL P.02

# EXHIBIT 9

In the United States Court of Federal Claims

| | |
|---|---|
| Appeal of American Automar, Inc.<br>Under Contract N-00033-02-C-5505 | Case No. ________ |

Affidavit of Joseph Haver

1. I am the Chief Financial Officer of American Automar, Inc., the Plaintiff in this case. I am fully familiar with the Company's financial books, records, and accounting practices.
2. I regularly monitor the costs being incurred on the contracts the company has with the Military Sealift Command (MSC). Those contracts that I financially monitor include the MSC charter for the American TERN, which is the subject of this litigation.
3. The Company's current daily charter hire payment from MSC (through approximately August 24, 2004) is $22,900.00 per day. The Contracting Officer's final decision in this case states that this payment will decrease to $19,900.00 per day effective August 24, 2004.
4. I know from my own examination of the Company's books that the historical costs indicate that the American

Tern, the subject of this litigation, costs $27,000 per day to operate. This is the same figure that was used in the Plaintiff's Contract Disputes Act certified claim that was submitted to the Contracting Officer.

5. If American Automar does not receive relief from the $19,900.00 per day payment that MSC is going to implement as of August 24, 2004, the Company will experience extraordinary losses on this contract approaching $3 million.

6. I hereby state under penalties of perjury that the foregoing statements are true and correct to the best of my personal knowledge and belief.

Joseph Haver

Subscribed and sworn before me, a Notary Public for the State of Maryland, by Joseph Haver, who is personally known to me or has been satisfactorily identified) on this 19TH day of August, 2004.

Amabel L. Landen
Notary Public

AMABEL L. LANDEN
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires January 28, 2006

# EXHIBIT 10

file

# HOLMES, SCHWARTZ & GORDON

ATTORNEYS AT LAW

IN WASHINGTON, DC AREA
17 WEST JEFFERSON STREET
SUITE 202
ROCKVILLE, MARYLAND 20850
TELEPHONE: (301) 340-1251
TELECOPIER: (301) 340-1253

RESEARCH CENTER
205 MAIN STREET
P.O. BOX 339
PRESTON, MARYLAND 21655
TELEPHONE: (410) 820-9724
TELECOPIER: (410) 820-9640

IN NEW YORK
320 ENDO BOULEVARD
GARDEN CITY, NEW YORK 11530
TELEPHONE: (516) 832-2525
TELECOPIER: (516) 832-2533

Via E-mail and Federal Express

June 22, 2004

K.D. Allen
Contracting Officer
Military Sealift Command
Department of the Navy
914 Charles Morris Court, S.E.
Washington Navy Yard, D.C. 20398-5540

Re: Your Reference - 5000 - Ser PM5, 15 June 2004; Contract N00033-02-C-5505

---

NOTICE OF BREACH OF CONTRACT AND
IMPROPER ATTEMPTED EXERCISE OF OPTION;
FILING OF CLAIM UNDER THE CONTRACT DISPUTES ACT;
DEMAND FOR CONTRACTING OFFICER'S FINAL DECISION

Summary.

This is American Automar's formal notice to the Military Sealift Command that MSC has breached the AMERICAN TERN contract by attempting to exercise an expired option, and directing the contractor to proceed with performance at a reduced payment rate.

This document further serves as American Automar's certified claim under the Contract Disputes Act of 1978. American Automar hereby demands a prompt Contracting Officer's final decision on this claim.

Your referenced letter of 15 June 2004 is erroneous as to the facts as well as to American Automar's legal rights. Indeed,

the letter is contrary to the established case law with respect to the effective exercise of options.

Pursuant to your direction, American Automar will at this time continue performing this contract, while accumulating its increased costs. It is estimated that its costs, plus reasonable profit for operating the ship, are at least $29,000.00 per day. American Automar fully reserves its right to stop performance because of the Government's breach of contract, cardinal change, and failure to pay.

The contractor hereby demands an equitable adjustment in the contract price for its costs plus profit incurred in operating the ship pursuant to MSC's direction to perform under an expired option.

Factual Discussion.

Your letter of 15 June 2004 is the culmination of a series of MSC activities relating to payments due under this contract. MSC has been continuously late throughout contract performance in paying the contractor its due invoices. This matter has been repeatedly raised with MSC officials.

Pursuant to Contract paragraph IV(e), and Drytime Block 4, MSC must exercise its option for the second 17-month term of this contract on or before Friday, April 23, 2004. This is 30 days before the expiration of 17-months from ship delivery, which occurred on December 24, 2002. MSC knew this was a firm option exercise date, and even referred to it as such on its web site for public review. Thus, the option exercise was due to the contractor on or before Friday, April 23, 2004.

American Automar did not receive any notice by that date, either oral or written, that the option would be exercised. Indeed, the Contracting Officer did not call the contractor until Tuesday, April 27, 2004. During this call, the Contracting Officer first raised the issue of the "missed" option date, and asked the contractor whether this would be "a problem"

Your letter of 15 June 2004 is MSC's first attempt to actually exercise the option in writing. It is over 45 days late. MSC is even attempting to exercise the option outside of the original 17-month contract period.

MSC recognized that it missed the original option exercise date, and by letter 4330, 03 May 2004, you as the Contracting Officer stated that the Government intends to redeliver the AMERICAN TERN on or about 23 May 2004 upon completion of the discharge of Government cargo. This action is completely inconsistent with the Government's current argument that the option somehow remains alive.

By your letter dated 5 May 2004, you unilaterally exercised the short-term option to extend services under the contract for a period of 90 days "until on or about 23 Aug 2004". This action -exercising the standard short-term extension clause - is also fully consistent with the fact that the 17-month option exercise deadline had passed, and that you recognized it as such. This short-term service option continuation allows the ship to finish its summer voyage to Thule. This separate short-term extension has nothing to do with the firm 17-month option exercise, which was due on April 27, 2004.

A series of negotiations between senior MSC and company officials ensued. MSC fully recognized that the option had expired. Automar was candid with MSC, and explained that it could not perform the option now that it had expired because the company was losing money. At no time during these discussions did MSC attempt to assert that the 17-month option was still alive.

The 17-Month Option Provision.

Drytime Box 4 is the operative contract provision stating the option period terms:

> 4. Charter Period: Seventeen-months with (two) Seventeen-month option periods. Government's option to cancel after one year in any option period with sixty days prior notice.

Contract Provision part IV(e) Charter Period states:

> This Charter Party shall be for the period designated in Box 4, commencing upon the Charterer's acceptance of the vessel and continuing until either the date of her redelivery or the completion of the voyage then current, at Charterer's sole option. Any optional periods shall be stated in Box 4. . .

The contract is crystal clear on what the option period is: there are two 17-month option periods per Box 4 following the initial 17-month term. The case law clearly holds that the Government may not unilaterally change or otherwise affect this 17-month option period.

The fact that the Government can separately extend performance for a short-term (up to six months) has nothing to do with, and no affect upon, the Government's obligation to exercise the 17-month option thirty days prior to the expiration of the initial 17-month term.

In addition, the fact that all option periods shall be in continuation has nothing to do with the Government's failure to exercise the option within thirty days of the end of the first 17-month term.

The 15 June 2004 letter, now over 45 days late to exercise the 17-month option, is obviously an intentional creation by counsel to try to link together the short-term, three-month option exercise, and assert that such an action somehow unilaterally extends the 17-month separate option, which has long since expired. This will not work. The case law below shows this.

Legal Discussion.

The Boards and Courts have repeatedly rejected arguments that the Government can unilaterally extend a firm option period. Following Court proceedings, the Government will be directed to pay the contractor's actual costs plus a reasonable profit for performing the remaining work. Automar's current

estimate is that this amounts to $29,000.00 per day or more versus the expired charter hire rate of $22,900.00.

American Automar recognizes that the ship, and the services that are being provided, are in many ways unique. If the Government does not have this ship available, it cannot perform the Thule mission efficiently nor the Antarctic re-supply mission, which is upcoming.

Notwithstanding the financial hardship of such performance, American Automar intends to continue performing at this time under reservation of rights. It will, therefore, receive and accept under protest the reduced charter hire payments of $19,900.00 per day, and seek a Declaratory Judgment (through litigation under the Contract Disputes Act) holding that it is entitled to full compensation for its actual costs of performance plus a reasonable profit ($29,000 plus). Alliant Techsystems v. United States, 186 F.3d 1379 and 178 F.3d 1260 (Fed.Cir. 1999).

Commencing with the Court's decision in International Telephone and Telegraph v. United States, 453 F.2d 1283 (Ct.Cl. 1972) it has been consistently held that (i) the Government must exercise an option on or before the date that the option exercise is due, (ii) the exercise must be in writing, (iii) the option exercise must be transmitted to the contractor, and (iv) the option must be unconditional.

It is also established law that Government attempts to unilaterally extend an option date (in this current case through the use of a short-term continuation of service) are not effective. No unilateral action by the Government extends an option exercise date. The contractor must agree to an extension of the exercise date or the reference point from which the option exercise is determined.

Absent such bilateral action or agreement by the contractor, no unilateral Government attempt to extend an option exercise date is effective. E.g., Universal American Enterprises, Inc., ASBCA No 22,562, 81-1 BCA ¶ 14942; Safeguard Maintenance Corp., IBCA No. 3379-E, 95-1 BCA ¶ 27,383.

Given the clear law on this issue, American Automar cannot understand why the Government believes that its unilateral actions could somehow extend the 17-month option exercise date.

Moreover, the Government's 15 June 2004 letter is itself defective as an option exercise because it is conditional upon the availability of funding. As the Board held in J.E.T.S, Inc., ASBCA 26135. 82-2 BCA ¶ 15,986, an option exercise must be unconditional to be effective.

The Board found that the inclusion of availability of funding language by itself in such an option exercise makes the exercise conditional and of no effect. The same situation exists in this case as demonstrated by the Contracting Officer's 15 June 2004 letter, which contains conditional funding language.

As MSC should know, there are numerous Board and Court cases holding that any unilateral attempt by the Government to extend the option exercise date after it has expired is ineffective:

In White Sands Construction, Inc. 2004 W.L. 870704, the Board held that the Government's untimely exercise of the first option made any subsequent exercise attempts at the second option exercise date ineffectual. The Board specifically allowed the contractor a total cost recovery -- all its cost of performance plus reasonable profit, less the amount that it was paid by the Government. The original contract price was properly disregarded.

The Board also held that all preliminary notices to the exercise of the option had to be given in a timely fashion for the option to be effectively exercised. In the present situation, MSC has done none of these things.

The Interior Board has also held that if the Option Clause language is in any way ambiguous, such ambiguity is the Government's responsibility as draftsman, and the clause will therefore be construed against the Government: again strict

compliance with the stated notice requirements, and notice at the earliest possible date, is required for an effective option exercise. Jim Phillips Contracting, Inc., IBCA No. 4319, 04-1 BCA ¶ 32,416

Even when the option exercise date is keyed to an external event, and not to a specific date in the contract, the Board has been rigorous in finding untimely option exercises invalid. The option must be exercised by the earliest possible date that the event occurred, not based upon Government speculation and conjecture about when various events happened. The Boeing Company, ASBCA 37579, 90-3 BCA ¶ 23,202.

Quantum of Recovery.

The foregoing cases make clear that when the Government is found to have improperly exercised an option, and forces the contractor to go forward with the work, it is not permitted to simply pay the previous contract price.

The contractor is entitled to an equitable adjustment in which it recovers the traditional actual cost of performance plus reasonable profit. As stated here, Automar's current estimate is that its actual costs of performance plus reasonable profit is at least $29,000.00 per day. Automar hereby demands payment of these amounts to which it is entitled. Interest commences at this point under the Contract Disputes Act.

Claim Certification

American Automar hereby certifies this document as a claim under the Contract Disputes Act of 1978. The parties are obviously in serious dispute concerning their respective obligations under the contract with respect to payment and performance.

MSC seeks to exercise an expired option and pay the contractor at the lower option rate; Automar disputes this position in its entirety and contends that the option is expired, thereby entitling it to recover its actual costs plus a reasonable profit for all further performance.

Automar has attached the appropriate certificate as prescribed by the FAR to this document.

Demand for Contracting Officer's Final Decision.

Since the time it learned that the option for the 17-month term had expired, the Government has consumed over 45 days in formulating its new legal position as stated in the Contracting Officer's June 15, 2004 letter.

Automar believes that the Government's actions entitle it to proceed immediately to the Court or the Board under the Court's decision in Alliant Tech Systems, supra. However, it will follow the letter of the Contract Disputes Act, and therefore hereby demands a prompt Contracting Officer's final decision on this certified claim.

In light of the time that has passed, the seriousness of the dispute, and the single legal issue involved, American Automar asks that the Contracting Officer issue his final decision within 20 days. If the Contracting Officer does not do so, American Automar will consider immediately proceeding to the ASBCA or the Court of Federal Claims, for a Declaratory Judgment.

Very truly yours,

Donald C. Holmes
Attorney for American
Automar Inc.

Attachment:
CDA Certificate

Contract Disputes Act Certification

I certify that the claim for the contractor's actual costs incurred, plus profit, due to the Contracting Officer's direction regarding the expired option on the AMERICAN TERN is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

Joseph Haver
American Automar, Inc.

**EXHIBIT 11**

DEPARTMENT OF THE NAVY
COMMANDER, MILITARY SEALIFT COMMAND
914 CHARLES MORRIS CT SE
WASHINGTON NAVY YARD DC 20398-5540

IN REPLY REFER TO

18 August 2004

By Federal Express

Mr. Larry Cosgriff
American Automar, Inc.
6550 Rock Spring Drive, Suite 300
Bethesda, Maryland 20817

Re: Claim Under Contract No. N00033-02-C-5505 – Contracting Officer's Final Decision

Dear Mr. Cosgriff:

This is in response to your claim of June 22, 2004, submitted by your attorney, in which you seek payment of charter hire at $29,000 per day based on the assertions that Military Sealift Command ("MSC") improperly exercised a contract option and has breached the subject Contract. As discussed below, your claim is denied.

On September 5, 2002, MSC awarded American Automar, Inc., the subject contract for the time charter of the AMERICAN TERN. The stated charter period consisted of a seventeen-month base period and two, seventeen-month options. In accordance with Part IV(e) of the Contract, options must be declared "not later than thirty days prior to the expiration of the period then current."

The Government accepted delivery of the AMERICAN TERN on December 24, 2002. In accordance with Part IV(e) of the Contract, the contract's base period commenced to run on that date and was to continue until either the vessel's redelivery or completion of the voyage then current. At the time of acceptance MSC expected to redeliver the vessel on May 23, 2004.

On May 5, 2004, MSC elected to exercise its right to extend services for ninety days under FAR 52.217-8, which was included in the Contract as awarded. In doing so, the vessel's expected redelivery date (and the expiration date of the base period) changed from May 23, 2004, to August 23, 2004.

On June 15, 2004, MSC exercised the first seventeen-month option pursuant to Part IV(e) of the Contract by providing written

notice of the same to your company. This exercise was made well before July 25, 2004, which was the last day the Government could unilaterally exercise the option based on the base period's expected expiration date of August 23, 2004.

Further, the fact that the option exercise referenced the incremental funding clause (DFARS 252.232-7007) did not render the exercise conditional and, therefore, ineffective. That clause was included in the Contract as awarded and was a preexisting term applicable to the options.

Based on the foregoing, MSC properly and timely exercised the first seventeen-month option in accordance with the terms of the Contract. Inasmuch as your claim is predicated on the assertion that the Government's exercise of the option was invalid, I consider your claim to be without merit. Therefore, it is denied.

In accordance with the Disputes clause, FAR 52.233-1(i), you are hereby directed to continue performance of the Contract in accordance with this decision. Under the terms of the first option, the Government is obligated to pay your company per diem in the amount of $19,900, effective August 24, 2004.

This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Sincerely,

K D Allen

K. D. ALLEN
Contracting Officer

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN AUTOMAR, INC. | ) | |
| Plaintiff | ) | |
| vs. | ) | Case No. ________________ |
| | ) | |
| THE UNITED STATES | ) | |
| Defendant | ) | |
| ________________________ | ) | |

**ORDER**

The Court having received briefing by the parties in this case, and having heard oral argument, hereby determines as follows:

1. Defendant was required by the contract to exercise all contract options on or before April 23, 2004;

2. Defendant failed to exercise any options prior to April 23, 2003, thereby causing all options to lapse;

3. Defendant's subsequent attempts to exercise any contract options were ineffective and a legal nullity, and Plaintiff has no obligation to perform any of the lapsed options; and

4. Plaintiff's measure of damages for complying with the Contracting Officer's invalid order is its actual costs plus a reasonable profit.

_________________________________
Judge
United States Court of Federal Claims

Date: ________________

CERTIFICATE OF SERVICE

I hereby certify under penalties of perjury that I caused 1. Plaintiff's Motion for an Expedited Ruling on Rights of Parties Under the Contract Disputes Act and Declaratory Judgment Under Court Rule 57; and 2. Plaintiff's Motion for Status Conference to be served on this 24th day of August 2004 via Federal Express overnight delivery as follows:

Director, Commercial Litigation Branch
U.S. Department of Justice
8th Floor, 1100 L. Street, N.W.
Washington, D.C. 20530

Donald C. Holmes
Attorney for
American Automar Inc.
Holmes, Schwartz & Gordon
205 Main Street
P.O. Box 339
Preston, MD 21655
(410) 820-9724 (telephone)
(410) 820-9640 (facsimile)

Dated: August 24, 2004